UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| SANDRA KENDALL,<br>    Plaintiff,<br><br>vs.<br><br>GLENN SCHEDIN and MICHAEL FISHER,<br>    Defendants/Third Party Plaintiffs<br><br>vs.<br><br>FIRST NIGHT WORCESTER,<br>JOYCE KRESSLER, and CHERYL BOLDUC<br>    Third Party Defendants | CIVIL ACTION<br>NO. 09-40163-TSH |

**MEMORANDUM OF DECISION AND ORDER**
**ON THIRD PARTY DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

**July 8, 2011**

**HILLMAN, M.J.**

### Nature of the Proceeding

By Order of Reference dated February 8, 2010, and by consent of the parties, this case was referred to me for all purposes, including trial and order for entry of final judgment, in accordance with 28 USC § 636(c) and Fed. R. Civ. P. 73. On January 28, 2011, Third Party Defendants First Night Worcester, Inc., Joyce Kressler and Cheryl Bolduc filed a Motion for Summary Judgment (Docket No. 40). After a hearing on the motion, I took the matter under advisement. For the reasons that follow, their motion for summary judgment is denied.

### Nature of the Case

Plaintiff Sandra Kendall ("Plaintiff" or "Ms. Kendall") brought this negligence action against Glenn Schedin and Michael Fisher ("Defendants" or "Third Party Plaintiffs") as a result of injuries she sustained when she tripped and fell off the steps while exiting the Epworth United

Methodist Church ("the Church") following a First Night Worcester ("First Night") event held there on the evening of December 31, 2007. Defendants were members of the Church and members of a First Night committee. Ms. Kendall suffered significant injuries in the accident and has brought this action alleging that the Defendants were negligent because there was no handrail at the exit to the stairs where she fell, that there was a lack of lighting in the area, and that there was a lack of staffing at the event which caused or contributed to her fall. The Defendants have brought claims for indemnification and contribution against First Night Worcester, Inc., and two of its employees, Director Joyce Kressler and Administrative Assistant Cheryl Bolduc ("Third Party Defendants"). First Night Worcester is a charitable organization which oversees the events and activities which take place on New Year's Eve in Worcester.

Third Party Defendants are moving for summary judgment, requesting the Court to determine that, as a matter of law, they did not breach a duty of care to Ms. Kendall and that the Third Party Plaintiffs are not entitled to indemnification or contribution. In the alternative, First Night Worcester is requesting that the Court find that it is a charitable organization and that any liability found against it shall not exceed the charitable cap of $20,000.[1]

## Procedural History

The plaintiff, Sandra Kendall, originally brought an action against the defendants, Glenn Schedin and Michael Fisher ("Schedin" and "Fisher," chairman and co-chairman of the First Night Committee for the Epworth Church). The original complaint sounds in negligence regarding control, lighting, warnings and instructions at/from the church. A third-party complaint was filed by the defendants against First Night Worcester, Inc. ("First Night Worcester") and John Doe, an unidentified employee or agent of First Night Worcester with

---

[1]. At oral argument, the responding parties agreed that First Night was subject to the charitable cap.

responsibilities for planning, scheduling, operating and supervising the First Night program at the Epworth Church. The third-party complaint makes claims for common law indemnity and contribution pursuant to M.G.L. c. 231B.

The plaintiff subsequently amended her complaint. In the Amended Complaint, the plaintiff alleges that on December 31, 2007 she was at the Epworth United Methodist Church ("the Church") located at 64 Salisbury St., Worcester in order to attend a program as part of the First Night Worcester program. Upon the conclusion of the program, while exiting the church the plaintiff fell down a set of stairs consisting of five steps which did not have a railing or banister of any type. It was evening and the plaintiff alleges there was inadequate illumination in the area of the stairs. As she was exiting from the church she reached for a railing, stumbled, lost her balance and fell (Exhibit A, Amended Complaint)[2].

In her Amended Complaint, the plaintiff alleges additionally that the defendants, Joyce Kressler and Cheryl Bolduc ("Kressler" and "Bolduc"), jointly and/or individually, had responsibilities which included scheduling, planning and coordination of events for First Night Worcester, including the events at the Epworth United Methodist Church on the evening of the accident; that they failed in their responsibilities and were negligent in their control and responsibilities; and as a result of their negligence the plaintiff was seriously injured (Exhibit A).

The Defendants/Third Party Plaintiffs, Schedin and Fisher, amended their third-party complaint to add First Night, Kressler and Bolduc as third-party defendants (defendants-in-crossclaim). The amended third-party complaint makes claims for common law indemnity and contribution pursuant to M.G.L. c. 231B (Exhibit B, Amended Third-Party Complaint).

---

[2] Unless otherwise noted, the references to lettered exhibits will refer to those attached to the Motion of the Third Party Defendants, found in Docket No. 40.

3

**Statement of Facts**

On the evening of December 31, 2007, Ms. Kendall attended a First Night performance at the Epworth Church. (Ex. C, *Pl.'s Answer to Interrog.*, A9) She entered the church via a staircase on Salisbury Street, near the corner of Lancaster Street; the staircase had railings on both sides. *(Id.)* Following the performance, Ms. Kendall and other attendees were directed to leave the Church through a different exit. (*Id.* at A9) She alleges that the hallway that led to the stairs, and the stairs, were poorly lit.

While exiting the Church, Ms. Kendall lost her balance as she reached out for a handrail, and she fell off the stairs. (*Id.*) She hit her head and was sent to the UMass Memorial Medical Center in an ambulance. (*Id.* at A2) While at the hospital, she had brain surgery because she was experiencing bleeding and swelling in the brain. (*Id.*) Ms. Kendall was then transferred to Fairlawn Rehabilitation Center on January 14, 2008 to begin rehabilitation (*Id.*) She had to relearn basic neuromuscular functions like walking, eating and swallowing because the injury had impaired some neurological functions. (*Id.*) She was discharged from Fairlawn on February 14, 2008 and was required to undergo additional physical and speech therapy. (*Id.*) Ms. Kendall alleges that she still has neurological and cognitive impairments as a result of her accident on December 31, 2007. (*Id.*)

The Church has been involved with First Night for 12 years; every year they held events in the Fellowship Hall.[3] (Ex. H, *Petterson Dep.,* p. 43) First Night never paid to lease or rent the premises during First Night events. To be admitted to a First Night event one had to purchase, and presumably display, a button. (*Id.* at 49-50; 63) Money raised from selling First Night buttons went to First Night headquarters, but any money raised from selling food benefitted the

---

[3] First Night continues to use the Epworth Church as a venue for its First Night events.

church. (*Id.* at p. 35)  There was no contract between First Night and Epworth, but typically a Site Aagreement is signed between First Night and the host venues. (Ex. 2, *Site Agreement Form;* Ex. 4, *Mackowiak Dep.,* p. 25), however, this was not signed for the December 31, 2007 event. (Ex. 4, *Mackowiak Dep.*, p. 25).

Glenn Schedin and Michael Fisher, the Defendants/Third Party Plaintiffs are members of the Epworth Church and are longtime volunteers for the First Night program. (Ex. H, *Schedin Dep.,* p. 11; 27) Mr. Schedin was site captain of the Church for First Night events for several years, including the night of December 31, 2007. (Ex. H, *Schedin Dep.,* p. 11)  A site captain acts as the liaison between First Night and the venue where events are held. (*Id.* at 12) Mr. Schedin was in charge of soliciting volunteers from the church to help in the kitchen and acted as security during the events at the Church. (*Id.*)

Mr. Fisher was one of the volunteers at the Church on the night of  December 31, 2007. (*Id.* at 27)  He helped guide people in and out of the Sanctuary and cleaned up at the end of the night. (*Id.* at 27; Ex. 8, *Fisher Dep.,* p. 25) Historically, First Night did not give the Church any guidance regarding lighting, foot traffic, the amount of volunteers, etc. (Ex. 5, *Kressler Dep.,* p. 36) Host venues were encouraged, however, to contact First Night if they needed additional help with volunteers. (*Id.*)

Joyce Kressler and Cheryl Bolduc are Defendants/Third Party Defendants in this action and are both employed by First Night.  Ms. Kressler is the Executive Director of First Night and Bolduc is the Administrative Assistant. (Ex. K, *Kressler Dep.,* p. 7)  Kressler, Bolduc, and other members of First Night plan and coordinate the programs that will occur during First Night. Ms. Bolduc calls host venues in advance to ensure they will be available to host events during the next First Night.  During the First Night events, Ms. Bolduc stays at the First Night headquarters

to respond to phone calls from venues with any issues that may occur during events. Ms. Kressler typically tries to visit as many of the venues as possible during the night to see how the event is going and how many people attend. Additionally, First Night board members typically attend some of the events and fill out site evaluations while they are there. (Ex. 5, *Kressler Dep.*, p. 44-45) They also answer any questions volunteers at the venues may have. There were two site evaluations filled out for Epworth on December 31, 2007. (Ex. L, *Site Evaluations*)

First Night provides any equipment necessary for the programs. First Night also hands out a list of safety procedures to all the host venues in case of an emergency (i.e. a fire, lost child), and direct volunteers to call First Night headquarters with issues. (Ex. 5, *Kressler Dep.*, p. 37-38) Additionally, First Night provides training to volunteers before the event takes place. These trainings cover issues like First Night protocols, managing the cash box, delegating responsibilities in each location, and general things pertinent to the event. (Ex. K, *Kressler Dep.*, p. 67) Third Party Defendant Kressler testified that training was not mandatory but was strongly encouraged. (*Id.*) However, First Night's website states that the training is mandatory for all volunteers. First Night also promulgates a brochure filled with information about each program, a map with information about host venues, and general information about First Night.

## Standard of Review

*Summary Judgment*

A district court grants summary judgment only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). *Santiago-Ramos v. Centennial P.R. Wireless Corp.*, 217 F.3d 46, 52 (1st Cir. 2000). A party seeking summary judgment bears the initial burden of demonstrating that

there is no genuine issue as to a material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548 (1986). The nonmovant in turn bears "the burden of producing specific facts sufficient to deflect the swing of the summary judgment scythe." *Mulvihill v. Top-Flite Golf* Co., 335 F.3d 15, 19 (1st Cir. 2003). "The mere existence of a scintilla of evidence is insufficient to defeat a properly supported motion for summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505 (1986). Consequently, "a party opposing summary judgment must present definite, competent evidence to rebut the motion." *Torres v. E.I. Dupont De Nemours & Co.*, 219 F.3d 13, 18 (1st Cir. 2000) (internal quotations and citations omitted).

A federal court sitting in a diversity case must apply the substantive law of the forum where the action is filed. *Semtek Int'l. Inc. v. Lockheed Martin Corp.*, 531 U.S. 497, 498 (2001). Here Plaintiffs premise their claims on Massachusetts law. *Vip Mortg. Corp,* 2011 U.S. Dist. LEXIS 13606, *6-7 (D. Mass. Feb. 11, 2011); see *Cohen v. McDonnell Douglas Corp.*, 389 Mass. 327, 333-34, 450 N.E.2d 581 (1983).

*Negligence Standard*

For a cause of action in negligence, a plaintiff must establish four elements: "(1) a legal duty owed by the defendant to the plaintiff; (2) a breach of that duty; (3) proximate or legal cause; and (4) actual damage or injury." *Coughlin v. Titus & Bean Graphics, Inc.*, 54 Mass. App. Ct. 633, 638, 767 N.E.2d 106 (2002); see e.g. *Jorgensen v. Massachusetts Port Authority*, 905 F.2d 515, 522 (1st Cir. 1990) (applying Massachusetts law). Negligence could be found either through the action or inaction of the defendant. See *Driscoll v. Relocation Advisors*, 1997 Mass. Super. LEXIS 106, *3-4 (Mass. Super. Ct. September 16, 1997); *Royal Indemnity Co. v. Pittsfield Electric Co.*, 293 Mass. 4, 6, 199 N.E. 69 (1935); *Osterlind v. Hill*, 263 Mass. 73, 75, 160 N.E. 301 (1928).

"Summary Judgment is seldom sought or granted in negligence actions." *Shaw v. Martin*, 16 Mass. L. Rep. 188, *9 (Mass. Super. Ct. 2003); citing *Manning v. Nobile,* 411 Mass. 382, 388, 582 N.E.2d 942 (1991). This is due to the fact that negligence actions often involve disputed facts, and it is up to the fact-finder to determine questions of negligence. *Id.*; *Roderick v. Brandy Hill Co.*, 36 Mass. App. Ct. 948, 949, 631 N.E.2d 559 (1994).

### Discussion

Traditionally, negligence is the failure of a reasonable person to exercise a degree of care that an ordinary person would have exercised in the particular circumstances. *Bash v. Clark Univ.*, 22 Mass. L. Rep. 84, *8 (Mass. Super. Ct. 2006); citing *Carroll v. Bouley,* 338 Mass. 625, 627, 156 N.E.2d 687 (1959). In general, a person does not owe others a duty of care from conditions they have not caused. *Cremins v. Clancy,* 415 Mass. 289, 296, 612 N.E.2d 1183 (1993). Negligence can only be found if the defendant owed a duty of care to the plaintiff. *Reder v. Travelers Plan Admin., Inc.*, 44 F. Supp.2d 92, 103 (D. Mass. 1999); citing *Yakubowicz v. Paramount Pictures Corp.*, 404 Mass. 624, 629, 536 N.E.2d 1067 (1989). While the court can look to the foreseeability of harm, it is not the main factor in determining whether there is a legal duty of care. *Panagakos v. Walsh,* 434 Mass. 353, 356, 749 N.E.2d 670 (2001). To determine whether there is a common law duty of care under Massachusetts law, the court looks to "existing social values, customs, and considerations of policy." *Yakubowicz,* 404 Mass. at 629; *Cremins*, 415 Mass. at 292. Here, the determining issue is whether the moving party, Third Party Defendants First Night, Ms. Kressler and Ms. Bolduc had a right to control the Epworth Church during the First Night events.

A duty of care may arise from a right to control land, even when the person found to have such a duty does not own or possess the land. *Davis v. Westwood Group,* 420 Mass. 739, 744-45,

8

652 N.E.2d 567 (1995); *Underhill v. Shactman,* 337 Mass. 730, 733, 151 N.E.2d 287 (1958); *Great N. Ins. Co. v. Paino Assocs.*, 364 F. Supp. 2d 7, 19 (D. Mass. 2005). The concept of a "right to control" should not be applied rigidly. *Zezuski v. Jenny Mfg. Co.*, 363 Mass. 324, 331, 293 N.E.2d 875 (1973); see W. Prosser & W. Keeton, Torts § 39, at 250 (5th ed. 1984); Restatement (Second) of Torts § 328D comment g (1965). "It must be enough that the defendant has the right or power of control, and the opportunity to exercise it . . . ." (internal citations omitted) *Zezuski*, 363 Mass. at 331; citing Prosser, Torts (4th ed.) § 39, at p. 220. In *McIntyre v. Boston Redevelopment Auth.*, 33 Mass. App. Ct. 901, 595 N.E.2d 334 (1992), the defendant emphasized that the question of duty depends on whether the party had the *right* to control, not actual control, of the property. *Id.* at 901; see also *Peters v. Haymarket Leasing, Inc.*, 64 Mass. App. Ct. 767, 774, 835 N.E.2d 628 (2005) ("It is the right to control, as opposed to actual control, that is determinative"). Thus, actual physical control over a space, while illuminating, is not required for a court to find a party had a right to control that space.

The Third Party Defendants contend they did not have the right to control the Church during the First Night event, either through actual control or constructive control. They contend that they had neither the physical control to alter the premises to ensure patrons safety, nor control over how the volunteers at the Church chose to run the event. They argue that they were under no duty to alter the church in any way to make it more handicap accessible (i.e. add handrails to stairs) and that they did not, at any time, attempt to control how the Church ran the event. Because Mr. Schedin and Mr. Fisher had physical control over the Church and decided how many volunteers to have during the event, the Third Party Defendants contend they did not have any right to control the premises during the First Night event. They relied upon the volunteers at the Church to ensure safe entry and exit to the Church, maintain proper lighting,

9

and ensure a safe atmosphere for the patrons.

However, Schedin and Fisher contend that the Third Party Defendants did have, or *could have*, the right to control how the event was run. First Night, under the direction of Kressler and Bolduc, planned and coordinated all the events of First Night on December 31, 2007. The Epworth Church was not involved in planning any of the programs, coordinating with performers, or providing equipment for the events. As further evidence of a right to control, Third Party Defendants contend that the fact that First Night board members visit and evaluate the host venues is evidence of an intent to control the host venues. While Third Party Defendants assert that they never gave critiques to the host venues, Defendants allege that a finder of fact could reasonably infer that First Night used site evaluations to determine whether or not to use a venue in the future.

Finally, Defendants contend that in an effort to make sure the event ran smoothly and safely, First Night organized and trained its volunteers, promulgated safety procedures to all host venues; and that Kressler and Bolduc provided telephone support to host venues during the events. Additionally, Defendants contend that while the volunteers at the Church were all members of the church, all of them were volunteering as First Night volunteers. Thus, they contend that no distinction should be drawn between volunteers from the host venue and general First Night volunteers.

There are many factual considerations in this case. While duty of care is a question of law, determining whether First Night had a right to control Epworth during the event involves weighing of contested, material facts. Control is the key under Massachusetts law. "It is elementary that liability for damage caused by the condition of premises commonly depends upon control of the offending instrumentality, either through ownership or otherwise." *See*

*Brown v. U.S.*, 557 F.3d 1, 4 (1st Cir. 2009), quoting *Underhill v. Shactman*, 337 Mass. 730, 151 N.E.2d 287, 290 (1958); see also *McIntyre v. Boston Redevelopment Auth.*, 33 Mass.App.Ct. 901, 595 N.E.2d 334, 336 (1992)("[T]he critical test is who had the right to control the property.").

While the undisputed evidence in *Brown* allowed the court to determine a duty of care from the summary judgment record, the material facts in this case are not as clear. The summary judgment demonstrates factual confusion about whether First Night and/or the Church had the right to control certain aspects of how First Night events are carried out at its venues. There is evidence to show that the Third Party defendants planned and coordinated the events that would be held at the Church, that they inspected and evaluated the host venues, that they could take steps to fix any problems that would arise during events, and promulgated safety procedures for the venues and First Night volunteers. Whether those duties undertaken by First Night with respect to the Church amounted to a *right to control* the premises regarding lighting, warnings and exiting instructions following First Night events, which would create a duty of care on the part of the Third Party Defendants is a disputed issue of material fact. Where disputed issues of material fact exist, an entry of summary judgment is improper. *See* Mass.R.Civ.P. 56(c); *Community Natl. Bank v. Dawes,* 369 Mass. 550, 554, 340 N.E.2d 877 (1976).

*Indemnification and Contribution*

With respect to the Third Party Complaint, the Third Party Defendants assert that that they cannot be held liable to the Plaintiff, and are therefore have to liability to Defendatns Schedin and Fisher for indemnification or contribution pursuant to M.G.L. c. 231B. Because liabilty has not been determined at this stage, the issues of indemnification and contribuiton are premature.

11

## **Conclusion**

For the reasons set forth above, Plaintiff's Motion For Summary Judgment (Docket No. 40) is ***denied***.

/s/Timothy S. Hillman
**TIMOTHY S. HILLMAN**
**U.S. MAGISTRATE JUDGE**